[No. 22730-4-II. Division Two. March 3, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. NEIL WARREN SKENANDORE, *Appellant*.

*Andrew Louis Subin,* for appellant (appointed counsel for appeal).

*Christopher O. Shea, Prosecuting Attorney,* for respondent.

HUNT, J. — Neil Skenandore appeals his jury conviction for second degree assault, arguing that the evidence of a deadly weapon was insufficient and that double jeopardy barred the prosecution because the prison had already disciplined him for the same act. He raises additional issues in a pro se brief, including prosecutorial delay in filing the information, violation of chapter 9.98 RCW (governing disposition of a pending information against a prison inmate), lack of jurisdiction, disregard of his application for a writ of prohibition, and ineffective assistance of counsel. Agreeing that the evidence is insufficient to establish that Skenandore used a deadly weapon, we reverse his conviction for second degree assault and remand for resentencing on the remaining custodial assault conviction.

## FACTS

Skenandore is an inmate at the Clallam Bay Corrections Center (CBCC). On July 21, 1996, he assaulted corrections officer Jason Jones with a homemade spear. The spear was two-and-one-half feet to three feet long, fashioned from writing paper rolled into a rigid shaft bound with dental floss, affixed to a golf pencil.

Jones was wearing a standard uniform short-sleeve shirt over a t-shirt. As he looked through the viewing window on the left side of the cell door, he bent over to pass the contents of a sack breakfast through the "cuff port."[1] The spear first struck Jones on the chest with "pretty good" force that "helped [him] stand" up, then once more on the

---

[1] A cuff port is a six-by-eighteen-inch locking portal in the cell door.

chest and once on the arm. The spear did not tear the shirt, but left three pencil marks: on Jones' left shirt pocket, near the center of the chest, and on the left sleeve. After the assault, Skenandore disassembled the spear and flushed parts of it down the toilet. When the officers retrieved the spear, it was no longer intact.[2]

At the CBCC medical clinic, Physician Assistant Phyllis Ellis examined Jones and, consistent with the pencil marks on Jones' shirt, noted:

> on his chest wall, he had near his left nipple, he had a mark, not a bruise but like somebody had gotten a sharp object and had stabbed the area or had pressed into the area; and above the nipple was another mark; and there was about a two inch linear mark on his left arm.

The marks were red and indented but had not broken the skin. Ellis released Jones without treatment. The marks on Jones' chest faded away within two hours.

CBCC punished Skenandore for this serious infraction by subtracting 90 days of good-time credit. On January 10, 1997, the State charged Skenandore with assault in the second degree. He was arraigned on January 24, 1997. On April 3, 1997, the information was amended to include an alternative, second count of custodial assault. Trial, originally set for April 14, 1997, was continued after Skenandore waived his right to a speedy trial.

Skenandore filed pro se pretrial motions to dismiss, arguing that his speedy trial rights had been violated; that the trial court had lost jurisdiction because trial was not held within 120 days after he made a request for final disposition of a pending information; and that because the prison had already punished him, a trial would constitute double jeopardy. The trial court denied Skenandore's motions to dismiss.

During closing argument, the prosecutor argued:

---

[2]The parties did not designate the spear as part of the record on appeal, but we asked that the record be supplemented with the spear remnants.

A sharpened pencil in the eye could cause substantial bodily injury and that is the definition of deadly weapon.

. . . .

[Skenandore was] not trying to break a bone but trying to put out an eye.

On November 13, the jury returned guilty verdicts on both assault charges. Skenandore filed a motion to arrest judgment, arguing the evidence was insufficient to prove that the spear was a deadly weapon. The trial court denied the motion, ruling, "[T]he evidence that came in supports the fact that this device that was stuck out through the port hole could have struck the officer in the eye which would have caused substantial loss, loss or impairment to the eye."[3]

At sentencing, the convictions were merged and sentence was imposed on only the second degree assault conviction. The trial court sentenced Skenandore to 72 months for second degree assault, to run consecutively to his previous sentence for first degree murder.

## ANALYSIS
### I. Sufficiency of Evidence

■ In reviewing a claim of insufficient evidence, we determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Ortiz*, 119 Wn.2d 294, 311-12, 831 P.2d 1060 (1992) (quotation marks and citation omitted). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *State v. Gentry*, 125 Wn.2d 570, 597, 888 P.2d 1105 (1995). This standard is not met here with regard to the deadly weapon element of second degree assault.

---

[3]But the record contains no evidence that Skenandore was aiming for Jones' face or eyes, that Skenandore stabbed Jones anywhere on the face, or that Jones' eye would have been injured had the spear struck his eye.

The crime of deadly weapon second degree assault occurs when a person assaults another with a deadly weapon without intent to inflict great bodily harm. RCW 9A.36-.021(1)(c); 9A.36.011(1)(a). A weapon is "deadly" if, "under the circumstances in which it is used, . . . [it] is *readily capable* of causing death or substantial bodily harm." RCW 9A.04.110(6) (emphasis added). " 'Substantial bodily harm' means bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part[.]" RCW 9A.04.110(4)(b).

We agree with the State that Division One's opinion in *State v. Schilling*, 77 Wn. App. 166, 889 P.2d 948 (1995), is instructive here. Schilling hit the victim on the head with a bar glass, knocking off the victim's eye glasses and causing lacerations that required stitches. *Id.* at 172. At trial, Schilling testified that the glass " 'could possibly cause substantial bodily harm or death' " and that the glass was " 'pretty strong' "; an expert testified that "a blow to the head using the glass could fracture the nose and/or cause lacerations requiring stitches and producing permanent scarring." *Id.* Division One ruled this evidence sufficient to support a conviction for deadly weapon second degree assault. *Id.*

In reaching this conclusion, the court observed that, because the glass was not a per se deadly weapon,

> the inherent capacity and "the circumstances in which it is used" determine whether the weapon is deadly. RCW 9A.04-.110(6). "Circumstances" include "the intent and present ability of the user, the degree of force, the part of the body to which it was applied and the physical injuries inflicted." *State v. Sorenson*, 6 Wn. App. 269, 273, 492 P.2d 233 (1972) (construing RCW 9.95.040) (quoting *People v. Fisher*, 234 Cal. App. 2d 189, 193, 44 Cal. Rptr. 302 (1965)). Ready capability is determined in relation to surrounding circumstances, with reference to potential substantial bodily harm. RCW 9A.04.110(6); *State v. Cobb*, 22 Wn. App. 221, 223, 589 P.2d 297 (1978), *review*

*denied,* 92 Wn.2d 1011 (1979); *State v. Carlson,* 65 Wn. App. 153, 159, 828 P.2d 30, *review denied,* 119 Wn.2d 1022 (1992).

*Schilling,* 77 Wn. App. at 171-72.

■ Although under some circumstances the spear used by Skenandore might be shown to be a deadly weapon, the record here demonstrates that it, like the glass in *Schilling,* is not a per se deadly weapon, as would be a long-bladed knife, for example. *See* RCW 9.94A.125. Thus, as in *Schilling,* we must look to the surrounding circumstances to assess whether the spear as used here could be said to be a deadly weapon.

Unlike *Schilling,* there was no testimony regarding the spear's potential for substantial bodily harm had Skenandore struck Jones on the face or in the eye. Nor was the jury able to examine the spear in its completely assembled state to determine its deadly weapon capability because Skenandore had partially disassembled it and flushed at least the pencil-point down his cell toilet.

The record did not reflect that Jones' face was near the cuff port such that the spear could have struck his eye; rather, the evidence was that Jones was looking through a higher vertical window off to the side as he served Skenandore breakfast through the cuff port. Moreover, the three blows all landed on Jones' upper torso, well below his head. The cell door that separated Jones and Skenandore, together with the small opening of the low cuff port, about one-third of the way from the floor, restricted the spear's movement.

Thus, unlike in *Schilling,* the surrounding circumstances inhibited the spear's otherwise potential, but unproven, ready capability to inflict substantial bodily harm.[4] The spear did not tear Jones' shirt or break his skin; and the non-abraded red indentations on Jones' chest faded within hours of the assault.

---

[4]*See Rogan v. State,* 203 So. 2d 24, 25 (Fla. Dist. Ct. App. 1967) (holding that whether a flowerpot used in an assault was a deadly weapon depended on the evidence; where the pot broke a glass window but the intervening screen prevented it from hitting the victim, the flowerpot was not a deadly weapon).

We hold that, based on the evidence in the record before us, no rational trier of fact could have found that Skenandore's spear was readily capable of causing death or substantial bodily harm under the circumstances in which it was used. Thus, the second degree assault conviction cannot stand.

## II. Double Jeopardy

■ ■ The alternate custodial conviction, however, suffers no evidentiary deficiencies. Rather, Skenandore challenges this conviction on double jeopardy grounds. "The double jeopardy clause of the federal constitution protects against . . . multiple punishments for the same offense," *State v. Cole*, 128 Wn.2d 262, 273, 906 P.2d 925 (1995), as does the Washington State double jeopardy clause, *State v. Gocken*, 127 Wn.2d 95, 107, 896 P.2d 1267 (1995). Prison discipline for infraction of administrative rules does not bar a subsequent criminal prosecution for the same conduct. *State v. Williams*, 57 Wn.2d 231, 232, 356 P.2d 99 (1960).[5] Thus, Skenandore's criminal prosecution in state court did not constitute double jeopardy and the custodial assault conviction is not barred.

We reverse the second degree assault conviction and remand for sentencing on the custodial assault conviction.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

SEINFELD and HOUGHTON, JJ., concur.

---

[5] Contrary to Skenandore's protestations, *Williams* remains valid law. It was cited with approval in *In re Personal Restraint of Mayner*, 107 Wn.2d 512, 521, 730 P.2d 1321 (1986) ("[M]isconduct while in prison can result in a denial of good time credit and may also result in additional criminal penalties."), and mirrors well-settled federal case law, *see, e.g., United States v. Brown*, 59 F.3d 102, 104-06 (9th Cir. 1995); *Garrity v. Fiedler*, 41 F.3d 1150, 1152-53 (7th Cir. 1994).