# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48408-1-II |
| Respondent, | |
| v. | |
| DARYL GLENN HARDING, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. – A jury found Daryl Glenn Harding guilty of two counts of second degree assault with a deadly weapon. He appeals, contending there is insufficient evidence to support his convictions because the State failed to disprove that Harding was acting in self-defense and failed to prove the weapon used during the assaults was a deadly weapon. Harding also alleges the trial court erred by denying his request for an inferior degree jury instruction on fourth degree assault and erred by giving the jury a first aggressor instruction. We affirm.

FACTS

A.    INCIDENT

Greg Stark lived in apartment 3, an upstairs apartment in a fourplex apartment unit. Both Stark's apartment and the neighboring apartment, apartment 4, had chairs outside their units on an adjoining balcony.

As Stark was leaving his apartment, he observed Harding sitting in front of apartment 4. When Stark returned, Harding was sitting in one of Stark's chairs in front of apartment 3. Harding

asked Stark for a cigarette, and Stark gave him one. Over the next two days, Harding remained outside of Stark's apartment and Stark continued giving him cigarettes.

After three days, Stark grew weary of Harding sitting on his balcony and asked Harding to not sit in front of his apartment because Harding was making both Stark and Stark's girlfriend nervous. Harding pulled a $10 bill out of his sock and showed it to Stark. Stark told Harding that he needed to go buy himself a pack of cigarettes.

Later that night, Stark's friend, Norm Jensen, came to Stark's apartment. Stark and Jensen left the apartment to go purchase beer. When they returned to Stark's apartment, Harding was sitting in a chair in front of apartment 4. Words were exchanged between the men and Harding called Stark, who was Native American, a racial slur. Stark's downstairs neighbor, who was also Native American, heard Harding and came outside of his apartment and started walking up the stairs.

Stark then told Harding to leave, calling Harding a racial slur. Stark and Jensen went inside Stark's apartment. Harding remained outside of Stark's apartment, hitting the door, using profanity, and calling Stark racial slurs. Stark called the police.

When Kelso Police Officer John Johnston arrived, Harding was sitting in a chair outside apartment 4. Harding told Officer Johnston he was transient and had been staying in front of apartment 4. He also told the officer that someone had stolen his guitar and amplifier. Officer Johnston tried to take a report, asking Harding to describe the items, but Harding got frustrated and stated, "Forget it, I'm leaving," and left. Verbatim Report of Proceedings (VRP) (Oct. 22, 2015) at 116.

Harding eventually returned to the apartment complex after the police left. Stark and Jensen were still inside Stark's apartment. When Jensen exited the apartment to go home, Harding swung a three foot, two-by-two board with nails sticking out of it (spiked board) at Jensen's head. Jensen put his hand up to protect his head. Harding struck Jensen in the hand, driving a nail through his finger. Harding also struck Jensen on the shoulder and side.

Stark exited the apartment and pushed Jensen back inside. Stark grabbed the spiked board, but Harding pulled the spiked board from Stark's hand, cutting Stark's hand. Harding then swung the spiked board at Stark's head. Stark raised his arm to block the blow. Harding then struck Stark multiple times in the forearm, puncturing Stark's arm with one of the nails protruding from the board. Stark went back inside his apartment and closed the door. Harding began to strike Stark's glass door with the spiked board, attempting to break it. Stark again called the police.

Officer Johnston returned to the apartment complex. When Harding saw him, Harding stood up, placed his hands behind his back, and said, "I'm putting my hands behind my back; arrest me; I got my point across." VRP (Oct. 22, 2015) at 118. Officer Johnston retrieved a spiked board propped up against the chair where Harding was sitting.

The State charged Harding with two counts of second degree assault, each with a deadly weapon enhancement. Harding argued that he acted in self-defense.

B.    TRIAL

During trial, Officer Johnston testified that the spiked board recovered at the scene posed "[l]ots of danger" and could break and/or puncture things. VRP (Oct. 22, 2015) at 127. Officer Johnston further explained that if a nail caught a person in the wrong location, it could kill them.

3

Jensen testified that as he was leaving Stark's apartment to go home; Harding swung a spiked board at his head. Jensen put his hand up to protect his head and Harding struck his hand, driving a nail through his finger. Harding also struck Jensen on the shoulder and side.

Stark testified that after Harding struck Jensen, Stark exited the apartment and pushed Jensen back inside. Stark grabbed the spiked board, but Harding pulled the spiked board from Stark's hand, cutting Stark's hand. Harding then swung the spiked board at Stark's head. Stark raised his arm to block the blow, and Harding struck Stark multiple times in the forearm, puncturing Stark's arm with one of the nails protruding from the board. Stark got back inside his apartment and closed the door. Harding began to strike Stark's glass door with the spiked board, attempting to break it. Stark called the police.

Harding also testified. He stated that Stark and Jensen were drunk and asked Harding how much money he had. Harding claimed that Stark and Jensen were "deliberately trying to pick a fight with me." VRP (Oct. 22, 2017) at 160. They continued to call him racial slurs after the police left the first time. Harding also stated that "the Indian that stays downstairs" came upstairs and told Harding, "I'll kill you if you disrespect my people." VRP (Oct. 22, 2015) at 163. Harding then called the three men, "[A] bunch of bitches" and stated, "You want to take my money, you come and take my money." VRP (Oct. 22, 2015) at 164. Harding claims he then put his hand behind his back pocket to make the men think he had a knife to scare them off. After that, the third man from downstairs said he had something for him and went downstairs to his apartment. Harding then looked for "any kind of weapon" he could find and located the spiked board. VRP (Oct. 22, 2015) at 165. After he found the spiked board, he challenged Stark and Jensen to "[c]ome on out here and take my money." VRP (Oct. 22, 2015) at 166. Stark and Jensen came at him "like

two defensive linemen getting ready to rush a quarterback." VRP (Oct. 22, 2015) at 166. Harding struck Stark and Jensen because he feared they would assault him or throw him off the balcony.

Harding did not claim that the spiked board was not a weapon. Instead, Harding claimed that he was justified in using the spiked board because he was outnumbered, being attacked, and needed to defend himself.

The trial court instructed the jury on self-defense. At the State's request, the trial court gave the jury a standard first aggressor instruction:

> No person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self-defense and thereupon use, offer, or attempt to use force upon or toward another person. Therefore, if you find beyond a reasonable doubt that defendant was the aggressor, and that defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as a defense.

Clerk's Papers (CP) at 91. Harding objected.

The defense proposed an inferior degree instruction for fourth degree assault. The trial court declined to instruct the jury on the inferior degree instruction because no evidence was presented that an assault was committed without the use of the deadly weapon.

The jury found Harding guilty as charged. The jury also made a special finding that Harding was armed with a deadly weapon at the time of the commission of both assaults. Harding appeals.

ANALYSIS

A.     SUFFICIENCY OF THE EVIDENCE

Harding first contends sufficient evidence does not exist to support his second degree assault convictions because the State failed to disprove that Harding was acting in self-defense and failed to prove the weapon used during the assault was a deadly weapon. We disagree.

Sufficient evidence exists to support a conviction if any rational trier of fact, when viewing the evidence in a light most favorable to the State, could find the essential elements of the crime beyond a reasonable doubt. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). A defendant claiming insufficiency of the evidence admits the truth of the State's evidence. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). All inferences from the evidence must be drawn in favor of the State and most strongly against the defendant. *Id.* When reviewing the sufficiency of the State's evidence, we consider circumstantial evidence and direct evidence as equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on issues of conflicting witness testimony, witness credibility, and the persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

To convict Harding of second degree assault, the State had to prove beyond a reasonable doubt that he assaulted another with a deadly weapon. RCW 9A.36.021(1)(c). A deadly weapon is means a "weapon, device, instrument, article, or substance . . . which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm." RCW 9A.04.110(6).

1.      Disprove Self-defense

Harding contends the State failed to disprove self-defense because Harding's testimony established that Stark and Jensen were using racial slurs; a downstairs neighbor joined in, making the confrontation three against one; and Stark and Jensen rushed Harding like football players. Harding's contention fails.

A person acts in self-defense when he reasonably believes that he is about to be injured and uses no more force than necessary to prevent an offense against his person. RCW

9A.16.020(3); *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009). Once a defendant offers some evidence tending to demonstrate self-defense, the burden shifts to the State to prove the absence of self-defense beyond a reasonable doubt. *State v. Walden*, 131 Wn.2d 469, 473, 932 P.2d 1237 (1997).

Evidence of self-defense is evaluated under both a subjective and an objective prong. *Id.* at 474. Under the subjective prong, the jury considers the apparent threat from the defendant's point of view. *Id.* Under the objective prong, the jury considers what "a reasonably prudent person similarly situated would have done." *Id.* Self-defense justifies only the degree of force that "a reasonably prudent person would find necessary under the conditions as they appeared to the defendant." *Id.* (citing *State v. Bailey*, 22 Wn. App. 646, 650, 591 P.2d 1212 (1979)).

Here, the parties involved had an argument. Harding left the building and then returned. When Harding returned, he swung a spiked board at Jensen's head as he was leaving Stark's apartment, driving a nail through Jensen's finger when Jensen put his hand up to protect his head. When Stark exited the apartment to push Jensen back inside, Harding swung the spiked board at Stark's head. Harding struck and punctured Stark's arm with a nail protruding from the board when Stark raised his arm to block the blow. When Stark got back inside his apartment, he called the police. Officer Johnston returned to the apartment complex. Upon seeing him, Harding stood up, placed his hands behind his back, and said, "I'm putting my hands behind my back; arrest me; I got my point across." VRP (Oct. 22, 2015) at 118.

Viewing this evidence in a light most favorable to the State and deferring to the trier of fact on issues of credibility, a reasonably prudent person would not believe he or she was about to be injured. Stark and Jensen were inside their apartment. Harding struck them as they exited the

apartment. Thus, the above evidence is sufficient to disprove Harding's claim of self-defense. Accordingly, sufficient evidence exits to support Harding's second degree assault convictions.

2.      Deadly Weapon

Harding next argues sufficient evidence does not exist to prove the spiked board was a deadly weapon. We disagree.

RCW 9A.04.110(6) distinguishes between deadly weapons "per se" (firearms and explosives) and deadly weapons "in fact" (other weapons). *In re Pers. Restraint of Martinez*, 171 Wn.2d 354, 365, 256 P.3d 277 (2011). Because the spiked board used in this case does not fall within the narrow scope for deadly weapons per se, the spiked board's status rests on the circumstances in which it was used. RCW 9A.04.110(6); *Martinez*, 171 Wn.2d at 365. The circumstances to consider when determining whether an object is a deadly weapon include "'the intent and present ability of the user, the degree of force, the part of the body to which it was applied and the physical injuries inflicted.'" *State v. Skenandore*, 99 Wn. App. 494, 499, 994 P.2d 291 (2000) (quoting *State v. Schilling*, 77 Wn. App. 166, 171, 889 P.2d 948, *review denied*, 127 Wn.2d 1006 (1995)).

Harding relies on *Skenandore* for his argument that the evidence is insufficient to support a finding that the spiked board constituted a deadly weapon under the circumstances. But Harding's reliance on *Skenandore* is misplaced.

In *Skenandore*, the defendant challenged his conviction of second degree assault for striking a corrections officer with a spear made out of rolled up writing paper bound with dental floss and affixed to a golf pencil. 99 Wn. App. at 496. The blows left non-abraded red indentations on the officer's chest that faded within hours of the assault. *Id.* at 500. In that case, the court

8

determined that the evidence failed to show the spear's ready capability to cause substantial bodily harm where all three blows landed on the officer's torso, well below his head, the cell door restricted the spear's movement, and the spear did not tear the officer's shirt or break the skin. *Id.* In addition, the court noted that the jury was unable to examine the spear in its completely assembled state to determine its deadly weapon capability because Skenandore had partially disassembled it and flushed the pencil point down his cell toilet. *Id.* The court reversed Skenandore's second degree assault conviction, holding that the surrounding circumstances inhibited the spear's ready capability to inflict substantial bodily harm. *Id.* at 501.

Harding mistakenly analogizes the defendant's spear in *Skenandore* to his spiked board in the present case. Here, with respect to the intent and present ability of the user, Harding's objective was to strike Stark and Jensen. Harding swung the spiked board at both Stark and Jensen's heads. Harding struck both men multiple times.

Next, with respect to degree of force used, Harding delivered the blows with such force that a nail punctured Stark's forearm. He also drove the nail through Jensen's finger and left a mark on his shoulder.

Lastly, Harding swung the spiked board at the heads of both men. He also struck Jensen in the side. Both men suffered the majority of their injuries while attempting to protect their heads from Harding's blows. A blow to the head from a spiked board put Stark and Jensen at risk for substantial injuries. Further, Officer Johnston testified the nails protruding from the board could cause death.

Under the circumstances in which the spiked board was used, it was readily capable of causing substantial bodily harm or death. Accordingly, there was sufficient evidence for the jury to find the spiked board was a deadly weapon.

B.     ALLEGED INSTRUCTIONAL ERROR

Harding next contends his convictions should be reversed based on instructional error. He argues the trial court erred by not instructing the jury on the inferior degree offense of fourth degree assault and giving the jury a first aggressor instruction. We disagree.

1.     Inferior Degree Offense

Harding argues that the trial court erred in denying his request for a jury instruction on fourth degree assault as an inferior degree offense of second degree assault as charged. Harding's argument fails.

A defendant is entitled to an instruction on an inferior degree offense only if it is supported by the law and the evidence, and he or she meets the requirements of the *Workman* test. *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978). Under the *Workman* test, a party is entitled to an inferior degree offense instruction if "(1) each of the elements of the lesser offense is a necessary element of the offense charged (legal prong) and (2) the evidence in the case supports an inference that only the lesser crime was committed (factual prong)." *State v. LaPlant*, 157 Wn. App. 685, 687, 239 P.3d 366 (2010). The legal prong is satisfied if each element of the lesser offense is a necessary element of the charged offense. *State v. Berlin*, 133 Wn.2d 541, 545-46, 947 P.2d 700 (1997). We review the trial court's ruling on the legal prong of a request for an inferior degree jury instruction de novo. *LaPlant*, 157 Wn. App. at 687. The factual prong is satisfied if the evidence would permit a jury to rationally find the defendant guilty of the lesser

offense but acquit the defendant of the greater offense. *Id.* We review a trial court's findings on the factual prong for an abuse of discretion. *Id.* A trial court abuses its discretion when it exercises it on untenable grounds or for untenable reasons. *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995).

Under the legal prong of the *Workman* test, fourth degree assault is an inferior degree offense to the charge of second degree assault by use of a deadly weapon since all of the elements of fourth degree assault are necessary elements of second degree assault.[1] Thus, the issue here is whether Harding satisfied the factual portion of the *Workman* test. Specifically, whether the evidence raises an inference that only the inferior degree offense was committed to the exclusion of the charged offense. *State v. Fernandez-Medina*, 141 Wn.2d 448, 455, 6 P.3d 1150 (2000).

Harding cannot show that only fourth degree assault was committed. All parties agree that Harding struck both men with the weapon. Stark and Jensen both testified that Harding had swung the spiked board at their heads. Officer Johnston testified that the nails protruding from the board could cause death. Thus, a jury could only have found that the spiked board was a deadly weapon. There was no evidence that Harding assaulted Stark and Jensen without the spiked board.

---

[1] "A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree:

. . .

(c) Assaults another with a deadly weapon."
RCW 9A.36.021(1)(c).

"A person is guilty of assault in the fourth degree if, under circumstances not amounting to assault in the first, second, or third degree, or custodial assault, he or she assaults another." RCW 9A.36.041(1).

The trial court declined to instruct the jury on the inferior degree instruction because no evidence was presented that an assault was committed without the use of the deadly weapon. Tenable grounds support this finding. The trial court did abuse its discretion in declining to instruct the jury on the inferior degree offense of fourth degree assault.[2]

2.      First Aggressor

Harding next contends that the trial court erred by giving a first aggressor instruction because his conduct was insufficient to show that he was the first aggressor. We disagree.

Whether the State produced sufficient evidence to justify a first aggressor instruction is a question of law we review de novo. *State v. Bea*, 162 Wn. App. 570, 577, 254 P.3d 948, *review denied*, 173 Wn.2d 1003 (2011). We view the evidence in the light most favorable to the party requesting the instruction. *Fernandez-Medina*, 141 Wn.2d at 455-56.

A trial court "properly submits [a first] aggressor instruction where (1) the jury can reasonably determine from the evidence that the defendant provoked the fight; (2) the evidence conflicts as to whether the defendant's conduct provoked the fight; or (3) the evidence shows that the defendant made the first move by drawing a weapon." *State v. Anderson*, 144 Wn. App. 85, 89, 180 P.3d 885 (2008) (citing *State v. Riley*, 137 Wn.2d 904, 909-10, 976 P.2d 624 (1999)). The trial court errs in submitting the instruction if the evidence shows the defendant used only words to provoke the fight. *Id.* (citing *Riley*, 137 Wn.2d at 910-11).

_____

[2] Harding also argues that the trial court's failure to instruct the jury on fourth degree assault would not be harmless error. The State responds that recent case law concerning harmless error and inferior degree instructions should be overturned. Since we hold that the trial court did not err in declining to instruct the jury on fourth degree assault, we decline to reach the parties' arguments regarding harmless error.

Here, the parties presented conflicting evidence as to whether Harding provoked the fight. Jensen and Stark testified that after an exchange of words with Harding, Harding left the premises. He later returned, armed with the spiked board, and waited outside Stark's apartment. When Jensen exited the apartment, Harding attacked him. In an effort to defend Jensen, Stark attempted to grab the weapon from Harding. Harding then struck Stark. Stark and Jensen's wounds are consistent with their testimonies. In contrast, Harding testified there was a second argument after the police left and a third man went downstairs to retrieve a weapon. Harding claims at that point he obtained his weapon. He testified that he hit Jensen and Stark as they came at him like defensive linemen rushing a quarterback.

The trial court followed the directive in *Riley* that a first aggressor instruction is appropriate if there is conflicting evidence as to whether the defendant's conduct precipitated the fight. 137 Wn.2d at 910. Based on the conflicting evidence, a jury could reasonably infer that Harding provoked the fight. We, therefore, conclude that in light of the conflicting evidence as to whose actions precipitated the fight, the first aggressor instruction was proper.

C.     STATEMENT OF ADDITIONAL GROUNDS (SAG)

In his SAG, Harding contends the police, Stark, and Jensen were not credible. In support of this argument, Harding points to alleged discrepancies between his testimony and their testimonies. But credibility is an issue for the trier of fact, and we do not review credibility determinations on appeal. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). The jury had the opportunity to observe the witnesses and determined who they found were credible. Therefore, we do not address this contention.

No. 48408-1-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Maxa, A.C.J.

_____
Sutton, J.