256 P.3d 277 (2011)
171 Wash.2d 354
In the Matter of the Personal Restraint Petition of Raymond MARTINEZ, Petitioner.
No. 83219-6.
Supreme Court of Washington, En Banc.
Argued January 18, 2011.
Decided April 28, 2011.
*279 Eric J. Nielsen, David Bruce Koch, Jennifer J. Sweigert, Nielsen Broman & Koch, PLLC, Seattle, WA, for Petitioner.
Douglas Robert Mitchell, Grant County Prosecutor's Office, Ephrata, WA, for Respondent.
MADSEN, C.J.
¶ 1 In his personal restraint petition (PRP), Raymond Martinez challenges his conviction for first degree burglary, contending that the State failed to prove beyond a reasonable doubt that he was armed with a deadly weapon within the meaning of the applicable statute. The Court of Appeals dismissed the petition on procedural grounds without reaching the merits. We hold that this petition is properly before the court and that Mr. Martinez's first degree burglary conviction rested on insufficient evidence. Accordingly, we reverse the Court of Appeals and vacate Mr. Martinez's conviction.

FACTS AND PROCEDURAL HISTORY
¶ 2 In the early hours of the morning of February 17, 2004, a burglar alarm at an uninhabited farm shop in rural Grant County alerted law enforcement officers of a potential break-in. Deputy Joseph Wester of the Grant County Sheriff's office arrived on the scene about 5 or 10 minutes later. He parked his marked patrol car in front of the shop, shined his headlights and spotlights in the direction of the shop, and noticed that the door of the shop had been forced open. He could hear someone moving about inside, and he immediately alerted another officer by radio that the door had been forced open. At that time, Mr. Martinez opened the door and stepped out of the building. The deputy, who was in full uniform, shined his flashlight on Mr. Martinez, drew his gun, and commanded Mr. Martinez to stop. Mr. Martinez fled immediately. Deputy Wester began chasing Mr. Martinez and was able to catch up to him when Mr. Martinez ran into a barbed wire fence, fell, did a somersault, and then continued running.
¶ 3 Once Deputy Wester caught up to the defendant, he "tackled him to the ground." 1 Verbatim Report of Proceedings (VRP) at 62. After handcuffing the defendant, Deputy Wester patted him down and noticed an empty knife sheath on his belt. When Deputy Wester inquired about the missing knife, Mr. Martinez said that it "should be in the sheath and that it must have fallen out while he was running." Id. at 65. He provided no further explanation. Later, law enforcement officers retraced the path on which the chase had occurred and located a knife in the mud, about 15 feet from the farm shop. Mr. Martinez identified the knife as his own. The knife had a fixed blade and was about three-and-a-half to four inches long.
¶ 4 Mr. Martinez was charged by amended information with burglary in the first degree, theft in the first degree, malicious mischief in the third degree, obstructing a law enforcement officer, resisting arrest, and possessing stolen property in the first degree. He pleaded not guilty on all six counts.
¶ 5 At trial, the knife and sheath at issue were admitted into evidence, but none of the witnesses provided a verbal description of *280 the sheath or indicated whether it was fastened or unfastened when it was found on Mr. Martinez's person.
¶ 6 In closing, the State argued:
The defendant on this date and time was in the process of using this knife. As you can see, and you'll have the opportunity to view this knife, this knife has a button and it has to be unbuttoned in order to come out. This is the knife that was there on February 17th, 2004. As you can see, it is sharp. It is deadly. The defendant was in the process of pulling it out. He was wearing what's been identified as Plaintiff's Exhibit 14, these blue latex hospital gloves. He possibly had a very good grip considering he was using these hospital gloves.
So in the process the defendant had to unsnap this button and then take this knife out. Fortunately for Officer [sic] Wester this knife fell on the floor or on the ground. Because if it had not, we wouldn't be talking about Joe Wester as being one person testifying in this case, we might have a coroner testifying about Joe Wester being dead.
2 VRP at 244-45. The defense, in response, argued that the knife was not a deadly weapon "under the circumstances in which it [was] used, attempted to be used, or threatened to be used." Id. at 250.
¶ 7 The jury found Mr. Martinez guilty of burglary in the first degree, among other crimes.[1] On direct appeal, Mr. Martinez argued that the prosecutor had committed prosecutorial misconduct by misstating the evidence, misleading the jury, and making an "inflammatory statement" in his closing remarks. State v. Martinez, noted at 132 Wash.App. 1031, 2006 WL 954047, at *2 (2006). In an unpublished decision, Division Three agreed that the prosecutor's comments were indeed unsupported by the evidence but held that they were not sufficiently prejudicial to warrant reversal where Mr. Martinez had failed to object at trial.
It may have been reasonable to infer that Mr. Martinez would use the knife if it had been available. But there is no evidence that Mr. Martinez reached for the knife, unbuttoned it, removed it, or that he had a good grip on it. There is also no direct evidence that Mr. Martinez would have used the knife to kill Deputy Wester. The prosecutor's comments were then improper. But the question is whether they are `so flagrant and ill-intentioned' that any prejudice could not have been cured by an instruction to the jury. And we conclude that they are not.
Id. at *3 (citations omitted).
¶ 8 On March 7, 2007, Mr. Martinez filed a PRP in the Court of Appeals, Division Three, seeking reversal of his first degree burglary conviction on grounds of ineffective assistance of counsel. In a letter to the Court of Appeals accompanying his petition, Mr. Martinez also argued that the State's first degree burglary charges were unwarranted because he had neither used nor threatened to use his knife during the alleged burglary. After the court requested briefing, Mr. Martinez filed a pro se brief, in which he abandoned his argument as to the use or threatened use of the knife. The Court of Appeals dismissed that petition on August 1, 2007, without addressing Mr. Martinez's argument that he had neither used nor threatened to use his knife. Order Dismissing Pers. Restraint Pet., In re Pers. Restraint of Martinez, No. 25942-1-III (Aug. 1, 2007).
¶ 9 On March 13, 2009, Mr. Martinez filed a CrR 7.8 motion for relief from judgment in which he argued that "[t]he Trial Court's failure to properly define deadly weapon in 1st degree burglary violated RCW 9A.04.110(6), and XIV Amendment of the United States Constitution." Mot. for Relief from J. and Order Under CrR Rule 7.8 (Pet'r's Suppl. Br. at App. B) at 2. Pursuant to CrR 7.8(c)(2), the superior court transferred *281 the motion to the Court of Appeals for consideration as a PRP.
¶ 10 On May 13, 2009, Division Three dismissed Mr. Martinez's March 13 petition as both untimely and successive. Order Dismissing Pers. Restraint Pet., In re Pers. Restraint of Martinez, No. 27949-9-III, at *3 (May 13, 2009). The Court of Appeals found that this petition was untimely because it was filed more than a year after the certificate of finality on the first petition, the judgment and sentence were valid, and Mr. Martinez did not raise any of the statutory exceptions to the one-year bar listed in RCW 10.73.100. Id. at *2. The court further held that it lacked jurisdiction to consider the petition under RCW 10.73.140 because Mr. Martinez had not shown good cause for failing to raise his claims in a prior petition. Id. at *2-3. Consequently, it dismissed Mr. Martinez's petition without reaching the merits. Id. at *3.
¶ 11 Still acting pro se, Mr. Martinez sought review of the order dismissing his second PRP.

ANALYSIS
¶ 12 RCW 10.73.090 imposes a general bar on PRPs filed more than one year after a judgment becomes final, where a judgment is valid on its face and rendered by a court of competent jurisdiction. However, under RCW 10.73.100(4), the one-year bar does not apply where "[t]he defendant pled not guilty and the evidence introduced at trial was insufficient to support the conviction."[2] Mr. Martinez's PRP is not time-barred.
¶ 13 In addition to holding that Mr. Martinez's petition was untimely, the Court of Appeals held that it lacked jurisdiction under RCW 10.73.140. Specifically, the court found that Mr. Martinez had not raised the deadly weapon challenge in his prior petition and lacked good cause for failing to do so. Order Dismissing Pers. Restraint Pet., No. 27949-9-III, supra, at *2-3.
¶ 14 When the Court of Appeals determines that its review is barred under RCW 10.73.140 but that RAP 16.4(d) might allow this court to entertain the petition, the proper practice is to transfer the petition to this court, where RCW 10.73.140 does not apply. In re Pers. Restraint of Johnson, 131 Wash.2d 558, 566, 933 P.2d 1019 (1997); In re Restraint of Perkins, 143 Wash.2d 261, 266, 19 P.3d 1027 (2001); see also RCW 2.06.030 ("No case, appeal or petition for a writ filed in the supreme court or the court shall be dismissed for the reason that it was not filed in the proper court, but it shall be transferred to the proper court.").
¶ 15 Under RAP 16.4(d), "[n]o more than one petition for similar relief on behalf of the same petition will be entertained without good cause shown." By its terms, RAP 16.4 applies with equal force in this court, unlike RCW 10.73.140, which applies only to the Court of Appeals. "A successive petition seeks `similar relief' if it raises matters which have been `previously heard and determined' on the merits or `if there has been an abuse of the writ or motion remedy.'" In re Pers. Restraint of Jeffries, 114 Wash.2d 485, 488, 789 P.2d 731 (1990) (quoting In re Pers. Restraint of Haverty, 101 Wash.2d 498, 503, 681 P.2d 835 (1984)).
¶ 16 In dismissing Mr. Martinez's first petition, the Court of Appeals did not address *282 Mr. Martinez's argument that first degree burglary charges were unwarranted because he had neither used nor threatened to use his knife during the burglary. Order Dismissing Pers. Restraint Pet., No. 25942-1-III, supra. Thus, when Mr. Martinez filed the instant petition, this issue had not been "previously heard and determined." See Jeffries, 114 Wash.2d at 488, 789 P.2d 731; In re Pers. Restraint of Greening, 141 Wash.2d 687, 700, 9 P.3d 206 (2000) ("Because we find that (1) Greening's first attempt to raise the issue was `not sufficient to command judicial consideration and discussion in a personal restraint proceeding,' and (2) there is no reasonable basis to conclude that the issue's merits were previously reviewed, we find that the issue was not `previously heard and determined' for purposes of successive petition analysis") (citations omitted) (emphasis in original).
¶ 17 When a petitioner is represented by counsel throughout the entirety of postconviction proceedings, it is an abuse of the writ to raise a new issue that could have been raised in an earlier petition. Greening, 141 Wash.2d at 700-01, 9 P.3d 206. Here, both petitions at issue were filed on a pro se basis, and consequently, the abuse of the writ doctrine does not apply.
¶ 18 Because the instant petition did not seek "similar relief" within the meaning of RAP 16.4(d), and because it was not an abuse of the writ, RAP 16.4(d) does not bar Mr. Martinez's collateral attack. See Jeffries, 114 Wash.2d at 488, 789 P.2d 731. Thus, we hold that Mr. Martinez's petition is properly before this court.
¶ 19 Next, we must determine whether Mr. Martinez is entitled to relief. To obtain collateral relief by means of a personal restraint petition, a petitioner must demonstrate unlawful restraint. RAP 16.4(a). In addition, where an alleged error is constitutional in nature, a petitioner must establish not only constitutional error but also "actual and substantial prejudice." Haverty, 101 Wash.2d at 504, 681 P.2d 835.
¶ 20 "A petitioner is under `restraint' if the petitioner has limited freedom because of a court decision in a civil or criminal proceeding, the petitioner is subject to imminent confinement, or the petitioner is under some other disability resulting from a judgment or sentence in a criminal case." RAP 16.4(b). While Mr. Martinez appears to have completed his sentence for first degree burglary,[3] he meets the restraint requirements nevertheless, due to the stigma and collateral consequences associated with his conviction. See In re Pers. Restraint of Powell, 92 Wash.2d 882, 887, 602 P.2d 711 (1979) ("[A]n unlawful conviction can serve as a restraint on liberty."); In re Pers. Restraint of Richardson, 100 Wash.2d 669, 670, 675 P.2d 209 (1983) (allowing petitioner who had completed sentence to bring personal restraint petition to "remove a serious blot from his record").
¶ 21 Mr. Martinez contends that his restraint is unlawful because his conviction rests on insufficient evidence. A conviction based on insufficient evidence contravenes the due process clause of the Fourteenth Amendment and thus results in unlawful restraint. Jackson v. Virginia, 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); RAP 16.4(c)(2).
¶ 22 The standard for determining whether a conviction rests on insufficient evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Green, 94 Wash.2d 216, 221, 616 P.2d 628 (1980) (emphasis omitted) (quoting Jackson, 443 U.S. at 319, 99 S.Ct. 2781). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." State v. Walton, 64 Wash.App. 410, 415, 824 P.2d 533 (1992). This standard is a deferential one, and questions of credibility, persuasiveness, and conflicting testimony must be left to the jury. Id. at 415-16, 824 P.2d 533.
*283 ¶ 23 First degree burglary under RCW 9A.52.020 requires the State to prove, among other elements, that the defendant was armed with a deadly weapon or assaulted another person. Mr. Martinez does not dispute that he was "armed." Instead, he argues that the evidence was insufficient to support the "deadly weapon" element of first degree burglary. The term "deadly weapon" is defined in RCW 9A.04.110(6), which supplies definitions for Title 9A, Washington's criminal code.
"Deadly weapon" means any explosive or loaded or unloaded firearm, and shall include any other weapon, device, instrument, article, or substance, including a "vehicle" as defined in this section, which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm.
RCW 9A.04.110(6) (emphasis added).[4] This definitional statute creates two categories of deadly weapons: deadly weapons per se, namely "any explosive or loaded or unloaded firearm" and deadly weapons in fact, namely "any other weapon, device, instrument, article, or substance . . . which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm." State v. Taylor, 97 Wash.App. 123, 126, 982 P.2d 687 (1999). If Mr. Martinez's knife is a deadly weapon for purposes of first degree burglary, it must fall within the latter category.
¶ 24 In construing a statute, we must attempt to discern and give effect to legislative intent. Waste Mgmt. of Seattle, Inc. v. Utils. & Trans. Comm'n, 123 Wash.2d 621, 629, 869 P.2d 1034 (2001). Where the language of a statute is unambiguous, we discern legislative intent from the statutory text alone and give effect to the plain meaning. Id. Where a statute contains multiple provisions, we interpret the statute so as to assign meaning to each provision. State v. Merritt, 91 Wash.App. 969, 973, 961 P.2d 958 (1998).
¶ 25 The language of RCW 9A.04.110(6) is unambiguous. Under the plain meaning of this statute, mere possession is insufficient to render "deadly" a dangerous weapon other than a firearm or explosive. To interpret the statute otherwise would eliminate the distinction between deadly weapons per se (firearms and explosives) and deadly weapons in fact (other weapons). Likewise, it would render meaningless the provision as to the circumstances of use, attempted use, or threatened use.
¶ 26 Thus, we hold that RCW 9A.04.110(6) requires more than mere possession where the weapon in question is neither a firearm nor an explosive. In accordance with the plain meaning of this statute, unless a dangerous weapon falls within the narrow category for deadly weapons per se, its status rests on the manner in which it is used, attempted to be used, or threatened to be used. RCW 9A.04.110(6).
¶ 27 While this court has not addressed the definition of deadly weapons under RCW 9A.04.110(6), the Court of Appeals has addressed this subject at length. In State v. *284 Gotcher, 52 Wash.App. 350, 356, 759 P.2d 1216 (1988), the defendant was apprehended by law enforcement after breaking into a residence. In the defendant's right coat pocket, police found a partially opened, four-and-a-half inch long switchblade, with the safety removed. Id. The defendant ignored the officers' commands to place his hands against a wall and instead "fumbled" with something near his right coat pocket. Id. He had to be restrained with police dogs. Id. at 356-57, 759 P.2d 1216. Finding that a knife was not a deadly weapon per se, Division One held that "there must be some manifestation of willingness to use the knife before it can be found to be a deadly weapon under RCW 9A.04.110(6)." Id. at 354, 759 P.2d 1216.[5] The Gotcher court found the evidence sufficient to establish such "willingness" and therefore sufficient to sustain a first degree burglary conviction.
¶ 28 Conversely, State v. Hall, 46 Wash. App. 689, 732 P.2d 524 (1987), involved deadly weapons per se, namely firearms taken in the course of a burglary. Because the firearm was a deadly weapon per se, Division Three reasoned that "no analysis of willingness or present ability to use a firearm as a deadly weapon" was necessary under RCW 9A.04.110(6). Id. at 695, 732 P.2d 524; see also State v. Speece, 56 Wash.App. 412, 416, 783 P.2d 1108 (1989) (no inquiry into willingness or present ability to use weapon is necessary for deadly weapon per se); State v. Faille, 53 Wash.App. 111, 766 P.2d 478 (1988) (sufficient evidence to sustain first degree burglary conviction where defendant was in possession of unloaded firearms but did not intend to use them).
¶ 29 In State v. Skenandore, 99 Wash.App. 494, 496, 994 P.2d 291 (2000), defendant was convicted of second degree assault (assault with a deadly weapon with intent to inflict great bodily harm) after attacking a corrections officer with a homemade spear. There, Division Two looked to the circumstances of the weapon's use to determine whether it was a deadly weapon within the meaning of RCW 9A.04.110(6). Id. at 499, 994 P.2d 291. It found that while the spear could have taken out the corrections officer's eye under different circumstances, it did not have the capacity to cause death or substantial bodily harm under the circumstances in which it was actually used because Skenandore could not reach the officer's eye from where he was standing. Id. at 500, 994 P.2d 291. Thus, the court agreed with Skenandore that the evidence was insufficient to prove he was armed with a deadly weapon within the meaning of RCW 9A.04.110(6). Id. at 501, 994 P.2d 291.
¶ 30 State v. Shilling, 77 Wash.App. 166, 169, 889 P.2d 948 (1995), involved a bar fight, in which the defendant hit the victim with a glass. Finding that the glass was not a deadly weapon per se, Division One looked to the circumstances of its use. Id. at 171, 889 P.2d 948. The court held that under RCW 9A.04.110(6), the circumstances of use include "`the intent and present ability of the user, the degree of force, the part of the body to which it was applied and the physical injuries inflicted.'" Id. (quoting State v. Sorenson, 6 Wash.App. 269, 273, 492 P.2d 233 (1972)). Applying that standard, it found sufficient evidence to sustain a conviction for assault with a deadly weapon.[6]
*285 ¶ 31 Next, we must determine whether the facts of this case, viewed in the light most favorable to the State, could lead a rational fact finder to find beyond a reasonable doubt that Mr. Martinez met the requirements of RCW 9A.04.110(6). See Green, 94 Wash.2d at 221, 616 P.2d 628. Specifically, as Mr. Martinez correctly notes, neither actual nor threatened use is at issue here, so the relevant inquiry is whether the State presented sufficient evidence to prove attempted use.
¶ 32 Even when viewed in the light most favorable to the State, the evidence in this case cannot support such a finding. No one saw Mr. Martinez with the knife, and he manifested no intent to use it. Furthermore, no one saw Mr. Martinez reach for the knife at any time after he was apprehended. Cf. Gotcher, 52 Wash.App. at 356, 759 P.2d 1216 (sufficient evidence of intent to use knife where knife was located in right pocket and defendant was seen reaching for right pocket during struggle with law enforcement officers). Indeed, when Mr. Martinez was apprehended, he did not reach for his knife, but rather, he fled. By one account, he raised his hands before fleeing, suggesting that he was not holding his knife at that time.
¶ 33 Though Mr. Martinez struggled when Deputy Wester tackled him to the ground, the knife was found along the path of the chase about 15 feet from the farm shop, suggesting that Mr. Martinez did not have access to the knife during the scuffle with Deputy Wester. Viewed in the light most favorable to the State, the only evidence that Mr. Martinez attempted to use the knife was the unfastened sheath. This evidence is insufficient to lead a rational fact finder to find intent to use the weapon beyond a reasonable doubt.[7]
¶ 34 Because Mr. Martinez's first degree burglary conviction rested on insufficient evidence, his conviction violates due process. Thus, he is unlawfully restrained. See Jackson, 443 U.S. at 316, 99 S.Ct. 2781 (conviction based on insufficient evidence implicates due process clause of Fourteenth Amendment).

CONCLUSION
¶ 35 We hold that Mr. Martinez's petition is not untimely nor is it barred by the rules governing successive petitions. Accordingly it is properly before this court. Because the evidence presented at trial was insufficient to sustain a first degree burglary conviction, we vacate Mr. Martinez's first degree burglary conviction and remand for further proceedings consistent with this opinion.
WE CONCUR: CHARLES W. JOHNSON, GERRY L. ALEXANDER, TOM CHAMBERS, SUSAN OWENS, MARY E. FAIRHURST, JAMES M. JOHNSON, DEBRA L. STEPHENS, and CHARLES K. WIGGINS, Justices.
NOTES
[1] After initially charging Mr. Martinez with first degree burglary, the State later requested instructions on the lesser included offense of second degree burglary, which does not require a deadly weapon. Holding that the addition of such an instruction would be prejudicial to the defendant in light of the timing, the trial court denied the request. This ruling was likely erroneous, as instructions on lesser-included offenses are generally permitted where the evidence would support the charge, but the State did not cross-appeal on this issue.
[2] In the motion for discretionary review and in the CrR 7.8 motion transferred to the Court of Appeals as a PRP, Martinez framed the issue as a matter of instructional error, not insufficient evidence, arguing that the jury was not instructed on the proper definition of "armed with a deadly weapon" for first degree burglary purposes. See, e.g., Mot. for Discretionary Review at 3 ("The conviction statute was unconstitution [sic] when the defendant was charged and tried by a jury that was never given any instruction at all regarding the correct and true definition of `armed with a deadly weapon' as used in the first degree burglary charge he was dealt. This failure to instruction [sic] violated the Defendant's Right to Due Process."). However, while Mr. Martinez did not explicitly argue in his CrR 7.8 motion that the evidence was insufficient to sustain his first degree burglary conviction, he made this argument implicitly. Indeed, he relied heavily on State v. Gotcher, an insufficient evidence case. See State v. Gotcher, 52 Wash.App. 350, 759 P.2d 1216 (1988). The supplemental brief in this court, written by an attorney, explicitly frames this issue as one of insufficient evidence, and we construe Mr. Martinez's claim accordingly. See RAP 1.2(a) (mandating liberal construction of procedural rules to promote justice).
[3] Mr. Martinez was sentenced to 38 months of confinement for first degree burglary in 2004. See Judgment and Sentence.
[4] Notably, this definition of "deadly weapon" differs from the definition appearing in RCW 9.95.040, which sets mandatory minimum sentences where a defendant is armed with a deadly weapon.

The words "deadly weapon," as used in this section include, but are not limited to, any instrument known as a blackjack, sling shot, billy, sand club, sandbag, metal knuckles, any dirk, dagger, pistol, revolver, or any other firearm, any knife having a blade longer than three inches, any razor with an unguarded blade, any metal pipe or bar used or intended to be used as a club, any explosive, and any weapon containing poisonous or injurious gas.
RCW 9.95.040(2). This court is not compelled to interpret RCW 9A.04.110(6) in a manner consistent with RCW 9.95.040(2), which treats knives with blades exceeding three inches as deadly weapons per se. Had the legislature intended such knives to function as deadly weapons per se for the purpose of differentiating between degrees of offenses, it could have drafted RCW 9A.04.110(6) in a way that mirrored RCW 9.95.040(2). Moreover, because enhancing a sentence under RCW 9.95.040 is fundamentally different from elevating a conviction from second degree burglary (a Class B felony) to first degree burglary (a Class A felony), it is not surprising that the standard for finding an individual armed with a deadly weapon under RCW 9.95.040(2) is different from that under RCW 9A.04.110(6).
[5] See also State v. Befford, 148 Ariz. 508, 510, 715 P.2d 761 (1986) ("In order to be `armed' within our burglary statute, a defendant must possess the item considered a deadly weapon or dangerous instrument in such a manner as to indicate his willingness or present ability to use it as a `weapon.'").
[6] In State v. Gamboa, 137 Wash.App. 650, 154 P.3d 312 (2007), Division Three adopted a strikingly different standard for deadly weapons in fact under RCW 9A.04.110(6). Specifically, the court held that a machete used to forcibly enter a home was a deadly weapon, despite the lack of evidence that it was used or intended to be used as a weapon. Gamboa, 137 Wash.App. at 651, 154 P.3d 312. The court held that "[i]t is the potential as a weapon and not how the machete that was actually used that is important. . . . A machete is readily capable of causing great harm by its very size." Id. at 653, 154 P.3d 312 (citations and footnote omitted). We disapprove Gamboa to the extent that it rejected a totality of circumstances test for determining whether a weapon other than a firearm or explosive is deadly under the first degree burglary statute. By characterizing a machete as a deadly weapon on the sole basis of its dangerousness and without regard to its actual, attempted or threatened use, the Gamboa court essentially read the circumstances provision out of the statute and treated the machete as if it were a deadly weapon per se.
[7] It is unsurprising that the Court of Appeals found the prosecutor's closing remarks unsupported by the facts in evidence. Martinez, 2006 WL 954047, at *3 ("It may have been reasonable to infer that Mr. Martinez would use the knife if it had been available. But there is no evidence that Mr. Martinez reached for the knife, unbuttoned it, removed it, or that he had a good grip on it. There is also no direct evidence that Mr. Martinez would have used the knife to kill Deputy Wester.").