# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49105-2-II |
| Respondent, | |
| v. | |
| FERNANDO JACA-ORTIZ, | Consolidated with: |
| Appellant. | |
| In re the Matter of the Personal Restraint of | No. 50181-3-II |
| FERNANDO JACA-ORTIZ, | UNPUBLISHED OPINION |
| Petitioner. | |

SUTTON, J. – Fernando Jaca-Ortiz appeals his jury trial convictions for first degree assault and second degree assault. He argues that the trial court erred when it refused to instruct the jury on self-defense or defense of others and that this prejudiced him by violating his due process right to present a defense. In his consolidated personal restraint petition (PRP), Jaca-Ortiz also argues that the evidence was insufficient to support the convictions because the DNA evidence taken from the weapon used in the assaults was inconclusive.[1] We hold that the trial court erred when it

---

[1] In his PRP, Jaca-Ortiz also argues that he received ineffective assistance of trial counsel and that his choice to go to trial and not agree to a guilty plea was impeded because he did not have the benefit of an interpreter. Because we reverse on other grounds, we do not reach these additional

refused to instruct the jury on the defense of others and that this deprived Jaca-Ortiz of his due process right to present his defense. We further hold that the evidence is sufficient to support the convictions despite the inconclusive DNA evidence. Accordingly, we reverse the convictions without prejudice and remand for further proceedings.

FACTS

I. BACKGROUND

On October 12, 2014, Juan Wanderstrand-Ledesma, his then-girlfriend Maria Santa Cruz-Romero, his cousin Misael Ledesma, and his friend Juventino Alonso Manzano-Quiroz spent the evening drinking beer and singing karaoke songs at a restaurant that they regularly frequented. Shortly before closing time, Jaca-Ortiz confronted Juan[2] about one of the songs Juan had been singing, and Juan began arguing with Ciro Aguilar. According to Juan, the argument escalated, and Aguilar removed his shirt and invited Juan to "go outside." 1 Jury Trial Proceedings (JTP) at 38.

According to Juan, he, Misael, and Manzano-Quiroz went outside with Aguilar to try to calm him down. Once outside, Aguilar hit Juan, and Juan struck Aguilar back in self-defense.

Jaca-Ortiz, who had not initially been present when the group went outside, returned carrying what was characterized as a car jack. When Manzano-Quiroz saw Jaca-Ortiz

---

issues. We reach Jaca-Ortiz's sufficiency argument because if it were to be successful, the charges would be dismissed with prejudice rather than without prejudice. *State v. DeVries*, 149 Wn.2d 842, 853-54, 72 P.3d 748 (2003).

[2] Because Juan Wanderstrand-Ledesma and Misael Ledesma share similar last names, we refer to them by their first names for clarity, we intent no disrespect.

2

approaching, he tried to pull Juan from the fight and leave. As Manzano-Quiroz grabbed for Juan, Jaca-Ortiz struck Manzano-Quiroz in the face, knocking him out. Jaca-Ortiz then struck Juan in the head with the car jack, also rendering Juan unconscious.

Misael was able to take the car jack from Jaca-Ortiz. Jaca-Ortiz briefly left the area, but he returned in his truck. Juan's friends and a waitress from the bar later testified that it appeared that Jaca-Ortiz was trying to run Juan over with his truck, but Jaca-Ortiz left when the police arrived.

The police tested the car jack for DNA. This test revealed a mixture of five individuals' DNA on the car jack. Manzano-Quiroz's DNA was specifically identified, but the other four contributors were not discernible.

## II. PROCEDURE

The State charged Jaca-Ortiz with the first degree assaults of Juan and Manzano-Quiroz. The case proceeded to a jury trial.

### A. TESTIMONY

Juan; Santa-Cruz Romero; Misael; Manzano-Quiroz; a waitress from the restaurant, Megan Renee McCall; several law enforcement officers; and three doctors testified for the State. Their testimony was consistent with the facts above.

Jaca-Ortiz was the only defense witness. Jaca-Ortiz testified that he left the bar about 1:30 AM to start his truck and waited for Aguilar to join him. When Aguilar did not arrive after about 15 minutes, Jaca-Ortiz walked back toward the bar. As he approached, Jaca-Ortiz saw Aguilar being hit by a group of about five people.

Jaca-Ortiz testified that when he tried to ask Aguilar what had happened, Misael appeared and chased him (Jaca-Ortiz) back to his truck. Jaca-Ortiz claimed that after he got into the front seat of the truck, Misael jumped into the back seat and grabbed the car jack. The two men then struggled over the car jack, and, after striking Jaca-Ortiz with the car jack, Misael took the car jack.

Both men returned to the fight. Jaca-Ortiz asserted that Juan and Manzano-Quiroz then began to hit him with their fists and that Misael hit him (Jaca-Ortiz) with the car jack and threatened to kill him.

On cross-examination, Jaca-Ortiz denied taking the car jack from his truck or hitting Juan or Manzano-Quiroz with the car jack. Instead, he asserted that Misael accidentally struck Juan and Manzano-Quiroz from behind when he (Misael) was trying to hit Jaca-Ortiz.

After Jaca-Ortiz denied assaulting anyone, the State questioned Jaca-Ortiz about his prior statements in an earlier proceeding suggesting that Jaca-Ortiz had initially planned to claim self-defense. When Jaca-Ortiz denied asserting self-defense, the State clarified that defense counsel had claimed self-defense and pointed out that his counsel's claim of self-defense meant that Jaca-Ortiz had to have assaulted someone. Jaca-Ortiz acknowledged that a self-defense claim would require him to have assaulted someone, but he continued to assert that he had not struck anyone.

## B. JURY INSTRUCTIONS

After the parties rested, the trial court addressed the jury instructions. Jaca-Ortiz proposed a self-defense instruction that included both defense of self and defense of another. The State proposed an instruction on defense of another.

Despite having originally proposed an instruction on defense of another, the State argued that because Jaca-Ortiz had asserted he had not assaulted anyone, in self-defense or otherwise, that no self-defense instructions were appropriate. Defense counsel argued that even though Jaca-Ortiz appeared to be disclaiming self-defense, the evidence supported a self-defense instruction because Jaca-Ortiz testified that three people beat him when he went to check on Aguilar. The State responded that it had asked specifically if Jaca-Ortiz had hit anyone and that Jaca-Ortiz had expressly denied having hit anyone, and thus, an instruction on self-defense instruction was not appropriate.

The trial court ruled:

> If you take a look at the testimony of Megan McCall or other witnesses, there's some indication that Juan and [Aguilar] left the bar in kind of a state of agitation and they were going outside to settle matters. They were going outside to fight. From some of the testimony, once they exited, the allegation is that Mr. Jaca-Ortiz was quickly there and struck them.
> *So potentially that could be construed as a defense of others.* Possibly Mr. Jaca-Ortiz saw them arguing and fighting, he was concerned, he arms himself with a jack, he comes and kind of preemptively strikes. *So in that sense it potentially could be a defense of others.* To say that he's defending himself under Mr. Jaca-Ortiz's version, yeah, if he's up like this protecting himself, that's self-defense, but he's not exerting any force or blows on others that would negate any assaultive behavior.
> So I think *given the testimony of Mr. Jaca-Ortiz, I'm not going to give any instructions related to self-defense or defense of others because there's nothing to negate.* There's no force that he used on anybody that needs to be negated.
> My only struggle with that decision is *the testimony of the prior witnesses which gives a colorable rise to the claim of defense of others.* So I'm not sure how to balance those two, but I think I've made my decision, and the Court of Appeals will let me know one way or the other if the issue goes up.

4 JTP at 367-68 (emphasis added). In closing argument, neither party discussed self-defense or defense of another.

The jury found Jaca-Ortiz guilty of first degree assault (Juan) and of second degree assault (Manzano-Quiroz). Jaca-Ortiz appeals his convictions.

## ANALYSIS

### I. DIRECT APPEAL

Jaca-Ortiz argues that the trial court erred when it refused to instruct the jury on self-defense or defense of another and that this err deprived him of his due process right to present a defense.[3] We agree that the trial court erred in refusing to instruct the jury on the defense of another.

### A. LEGAL PRINCIPLES

A criminal defendant is entitled to an instruction on his theory of the case if the evidence supports the instruction. *State v. Fisher*, 185 Wn.2d 836, 848, 374 P.3d 1185 (2016) (citing *State v. Williams*, 132 Wn.2d 248, 259-60, 937 P.2d 1052 (1997); *State v. Janes*, 121 Wn.2d 220, 237, 850 P.2d 495 (1993)). "Failure to [give such an instruction] is reversible error." *Fisher*, 185 Wn.2d at 849 (citing *State v. Griffin*, 100 Wn.2d 417, 420, 670 P.2d 265 (1983)).

Generally, a defendant is entitled to a self-defense or a defense of another instruction if, viewing the evidence in the light most favorable to the defendant, there is some evidence demonstrating self-defense or defense of another. *Fisher*, 185 Wn.2d at 849; *State v. Werner*, 170 Wn.2d 333, 336-37, 241 P.3d 410 (2010). We evaluate the sufficiency of the evidence for such instructions "by determining what a reasonable person would do standing in the shoes of the defendant." *Werner*, 170 Wn.2d at 337. "Because the defendant is entitled to the benefit of *all*

---

[3] Jaca-Ortiz reiterates this argument in his PRP. Because he does not present any additional argument, we do not address the PRP issue separately.

the evidence, *[his] defense may be based on facts inconsistent with [his] own testimony*," including facts established through evidence presented by the State. *Fisher*, 185 Wn.2d at 849, 851 (emphasis added).

"The question of whether the defendant has produced sufficient evidence to raise a claim of self-defense is a matter of law for the trial court." *Janes*, 121 Wn.2d at 238 n.7. Because the trial court here determined that there was a lack of evidence to support the self-defense or defense of another instruction, we review the trial court's decision de novo. *Fisher*, 185 Wn.2d at 849.

## B. DISCUSSION

Here, despite refusing to give the self-defense or defense of another instruction that Jaca-Ortiz proposed, the trial court found that the evidence as a whole could have supported an instruction on defense of others. We agree and hold that the trial court therefore erred in refusing to instruct the jury on defense of another.

A person's use of force against someone is lawful if he (1) reasonably believes that he is about to be injured or (2) is aiding a person who he reasonably believes is about to be injured. RCW 9A.16.020(3). The defendant must also show that he used no greater force than a reasonably prudent person would find necessary under the conditions as they appeared to the defendant. *State v. Walden*, 131 Wn.2d 469, 474, 932 P.2d 1237 (1997).

Considering the evidence as a whole and in the light most favorable to Jaca-Ortiz,[4] there was evidence that Jaca-Ortiz intervened after Juan and Aguilar began fighting and Juan's friends appeared to come to Juan's aid. This evidence would allow a jury to conclude that Jaca-Ortiz was

---

[4] *Fisher*, 185 Wn.2d at 849.

coming to the aid of someone he reasonably believed was about to be injured. And, although hitting an unarmed individual with a car jack could potentially be seen as using greater force than was necessary, taking the evidence in the light most favorable to Jaca-Ortiz, the evidence could have shown that using a weapon of some kind was reasonable because Jaca-Ortiz and Aguilar were outnumbered by Juan and his friends. Thus, the trial court was correct when it opined that Jaca-Ortiz was entitled to a defense of another instruction. And without this instruction, Jaca-Ortiz was not able to argue this defense theory to the jury.

The State relies on *State v. Gogolin*, 45 Wn. App. 640, 727 P.2d 683 (1986), *State v. Barrigan*, 102 Wn. App. 754, 9 P.3d 942 (2000), and *State v. Aleshire*, 89 Wn.2d 67, 568 P.2d 799 (1977), *abrogated in part on other grounds by State v. Dowling*, 98 Wn.2d 542, 656 P.2d 497 (1983), to support its argument that Jaca-Ortiz was not entitled to the self-defense instruction because he denied striking anyone. But in *Gogolin* and *Barrigan*, unlike here, there was no evidence from any source that the defendant feared for his safety or acted in defense of another. And in *Aleshire*, the only evidence that suggested self-defense was the defendant's own statement that he repudiated at trial. 89 Wn.2d at 71. Here, in contrast, the State's evidence supported a defense of another claim. And, as stated above, we consider all of the evidence, not just the defense evidence, when evaluating whether there was an adequate factual basis for the jury instruction. *Fisher*, 185 Wn.2d at 849, 851. Accordingly, these cases do not show that Jaca-Ortiz's claim that he did not strike anyone was sufficient to justify the trial court's refusal to give the defense of another instruction.

8

No. 49105-2-II/
No. 50181-3-II

Because we hold that the trial court erred when it refused to instruct the jury on defense of another, we reverse the convictions without prejudice and remand for further proceedings.[5] *Fisher*, 185 Wn.2d at 849 (failure to instruct the jury on the defendant's theory of the case when there was evidence to support that theory is reversible error).

## II. SUFFICIENCY

Finally, in his PRP, Jaca-Ortiz appears to assert that the evidence was insufficient to support the convictions because the DNA evidence taken from the weapon was inconclusive. PRP at 3. This assertion fails.

When reviewing a sufficiency of the evidence claim, we ask whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt. *In re Pers. Restraint of Martinez*, 171 Wn.2d 354, 364, 256 P.3d 277 (2011). When a defendant challenges the sufficiency of the evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it. *Martinez*, 171 Wn.2d at 364. We defer to the trier of fact as to resolving conflicting testimony, evaluating witness credibility, and evaluating the persuasiveness of the evidence. *Martinez*, 171 Wn.2d at 364.

The DNA evidence relates to whether Jaca-Ortiz struck the two victims with the car jack. Even presuming that the DNA evidence was inconclusive, there is ample evidence in the record to support the conviction. The State's witnesses testified that Jaca-Ortiz struck the two victims with

---

[5] Whether Jaca-Ortiz will be entitled to present a self-defense or a defense of another claim on remand will depend on the evidence presented if Jaca-Ortiz is retried.

9

the car jack. Taking this evidence in the light most favorable to the State, a reasonable trier of fact would find that Jaca-Ortiz was the person who struck the victims with the car jack, regardless of the absence of any DNA evidence confirming this testimony. Accordingly, Jaca-Ortiz does not show that the evidence was insufficient to support the conviction.

Accordingly, we reverse the convictions without prejudice and remand for further proceedings.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Sutton, J.

We concur:

_____
Johanson, J.

_____
Maxa, A.C.J.