
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35082-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| PEDRO M. HILLIARD, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Pedro Hilliard appeals his convictions for delivery of controlled substance by complaining about testimony of law enforcement officers and argument by the prosecution. We find no error and affirm.

FACTS

This prosecution arises from the sale of oxycodone by Pedro Hilliard to a confidential informant. Spokane Police Department detectives opened an investigation into the drug marketing activities of Hilliard after an informant notified the detectives that he could buy oxycodone pills from Hilliard.

On June 12, August 20, and September 25, 2014, detectives, with the assistance of the informant, conducted three controlled buys of oxycodone from Hilliard. On each

occasion, detectives met with the confidential informant in advance and conducted a strip search to confirm that the informant possessed no contraband on his person. The detectives handed the informant marked money, with which to purchase the drug. The informant next called Pedro Hilliard to schedule a meeting in the parking lot of the Fred Meyer store on 5th Avenue and Thor Street, in Spokane.

On June 12, 2014, the confidential informant exited the police vehicle and walked to the west side of the Fred Meyer building. The informant entered the inside of a red vehicle and headed north with the vehicle's occupants. The car conveyed the informant from and to the Fred Meyer parking lot and a north Spokane apartment complex. When the informant returned to the police vehicle, he surrendered six blue pills. Detectives then strip searched the informant again. On July 9, 2014, the confidential informant identified, from a photo montage, Pedro Hilliard as the merchant of the oxycodone.

On August 20, 2014, Spokane Police Department detectives espied Pedro Hilliard exit a blue mustang in the Fred Meyer parking lot. Detectives viewed the confidential informant walk with Hilliard to the west side of the store building where an exchange occurred. The informant returned to the police vehicle and yielded a plastic bag containing ten blue pills.

On September 25, 2014, the Spokane Police Department confidential informant entered the Fred Meyer store and waited inside. Pedro Hilliard arrived in the blue mustang and also wandered inside the store. Both Hilliard and the informant, as observed

2

by detectives, exited the store together. The informant, through audio surveillance, alerted detectives that the pair intended to walk to the intersection of 5th Avenue and Friske Street.

Undercover detectives drove to 5th Avenue and Friske Street and observed Pedro Hilliard and the confidential informant on a porch on South Friske Street. During the rendezvous and purchase on the porch, Hilliard requested that the informant procure for Hilliard a cigar from a nearby gas station. The informant utilized the restroom while at the station and then delivered the cigar to Hilliard. The informant returned to the detective vehicle absent the eight pills he bought from Hilliard. The informant returned to the gas station and grabbed the pills from the bathroom counter. The informant could not explain how he mislayed the pills in the bathroom. The Washington State Patrol Crime Laboratory confirmed that all pills procured from the three controlled buys contained oxycodone.

On some unknown date after September 25, 2014, the Spokane Police Department terminated the services of the confidential informant because of his bad behavior. The informant misappropriated and concealed money handed him for a controlled buy. He stole money from his family. He ingested drugs and committed other crimes while working for law enforcement.

PROCEDURE

The State of Washington charged Pedro Hilliard with three counts of delivering a controlled substance. Prior to trial, the court granted the State leave to amend the information to add an enhancement to one count by alleging delivering of the substance in a public park and within 1,000 feet of a school bus stop.

Before the start of trial, both sides submitted and argued a number of motions in limine. Pedro Hilliard forwarded no motion to prohibit law enforcement officers from uttering the term "controlled buy" during testimony. At trial, the State elicited testimony from the Spokane Police Department's lead detective about the process of conducting a controlled buy with a confidential informant. Throughout law enforcement officer testimony, detectives repeatedly referred to the transactions between the confidential informant and Pedro Hilliard as "controlled buys." Defense counsel also referred to the interactions as controlled buys.

During cross-examination and Pedro Hilliard's evidence, Hilliard's defense emphasized that the State's case hinged on the confidential informant's credibility. The defense highlighted lack of honesty based on the informant's termination of services after he misappropriated law enforcement funds, his conviction for a crime of dishonesty, his embezzling family money, and his use of drugs while assisting the Spokane Police Department.

During closing argument, Pedro Hilliard's counsel reprised the theme of the confidential informant's treachery and unreliability. Counsel insisted to the jury that the State did not prove the charges beyond a reasonable doubt because all charges relied on the testimony of an untruthful witness. Defense counsel began his summation:

> [The confidential informant] was a horrible drug addict. Her [the prosecution's] words, not mine. You know, if you think it's possible that [the informant] lied in this case, that's reasonable doubt. You know, the State's entire case rests on you believing that [the informant] offered you truthful testimony. And that's not [the informant's] fault. That's the State's fault. That's because we have nothing else to rely on.

Report of Proceedings (RP) at 310-11. Counsel added:

> You know, the fact is anything is possible when you're dealing with somebody who, by his own testimony, has said that he has lied; that he is a drug addict; that he has stolen; that he is out stealing from the community.
> . . . .
> The fact is, you know, they don't care. The State doesn't care that [the confidential informant] is a drug addict. They don't care that he's a thief. They don't care that he lies to his family and uses the money that he gets from the police to go out and buy more drugs and continue to get high. They don't care. But we do, because we expect more. We expect that before we're going to take somebody's liberty and we're going to put him in jail or do anything else with him, that we are convinced beyond a reasonable doubt that it happened. And you know, they just don't. And that's something that we should expect more of from our law enforcement officers. We should expect better work. We should expect a confidential informant—I mean, Detective Bowman said some people get involved in this and they do it because they want to better the community. You know, go use somebody like that, you know. Don't go use somebody that you don't even care that or are aware of that they have prior convictions for theft and that they are out committing additional thefts in our community at the same time that you're using them or attempting to use them as a confidential informant.
> The fact is, because we don't have better evidence, more evidence,

or any evidence other than the word of [the confidential informant], you know, the maps, the bus stops, the park, all the witnesses that testified to that, the drugs that were tested, none of that evidence means anything. None of that testimony means anything unless you first believe [the informant] that these drug transactions take place. And based on his history, what we know, what he admitted to on the stand, that's just not possible. And for that reason, I am asking you to find Mr. Hilliard not guilty of all three counts in this case.

RP at 312-13, 316-17.

During rebuttal summation, the prosecution began:

This is not about [the confidential informant]. This is about holding Mr. Hilliard accountable.
. . . .
That is what we are doing here. He is holding him accountable for it. . . .
. . . .
How do we hold him accountable? How do we even get to that point if we don't have anybody to even work with to buy, to catch him doing it? It's not [the confidential informant]'s accountability here. It's his. That's who we are holding accountable here right now. The only person today who is on trial, the only person that we have to worry about is Mr. Hilliard and what he did that day.

RP at 317-18. Hilliard did not object to the rebuttal argument.

The jury returned a guilty verdict on all three charges as well as the sentencing enhancement.

## LAW AND ANALYSIS

### Characterization of Controlled Buy

On appeal, Pedro Hilliard complains about State witnesses' recurrent employment of the term "controlled buy" during testimony and the prosecutor's utilization of the

6

phrase during questioning and argument. Hilliard argues that the law enforcement terminology violated his constitutional right to a fair trial by offering an opinion as to his guilt. Because Hilliard's defense centered on attacking the credibility of the confidential informant, Hilliard emphasizes prejudice resulting from uttering the term "controlled buy" because the expression implies a transaction transpired. Hilliard underlines that no detective directly observed a sale by Hilliard to the informant.

We doubt that the label "controlled buy" constitutes impermissible opinion testimony or violates any evidentiary rule. Nevertheless, we decline to address the merits of Pedro Hilliard's assignment of error because he did not object to the phraseology before the trial court and he does not argue manifest constitutional error.

Under a fundamental principle of appellate jurisprudence, a party may not assert on appeal a claim not first raised at trial. RAP 2.5(a); *State v. Strine*, 176 Wn.2d 742, 749, 293 P.3d 1177 (2013). Such a rule supports a basic sense of fairness and serves the goal of judicial economy by enabling trial courts to correctly rule on a matter and thereby obviate the needless expense of appellate review. *State v. Strine*, 176 Wn.2d at 749. The rule also ensures attorneys will act in good faith by discouraging them from riding the verdict by purposefully refraining from objecting and saving the issue for appeal in the event of an adverse verdict. *State v. Strine*, 176 Wn.2d at 750. Lastly, the rule prevents adversarial unfairness by ensuring the prevailing party is not deprived of victory by claimed errors that he or she had no opportunity to address.

Under RAP 2.5(a)(3), a party may not raise a claim of error on appeal not first asserted at trial unless the claim involves a manifest error affecting a constitutional right. Washington courts and even decisions internally have announced differing formulations for manifest error. First, the court must determine the patent nature of any truly constitutional error. *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009); *State v. Scott*, 110 Wn.2d 682, 688, 757 P.2d 492 (1988). Second, perhaps perverting the term "manifest," some decisions emphasize prejudice, not obviousness. The defendant must identify a constitutional error and show how, in the context of the trial, the alleged error actually affected the defendant's rights. *State v. O'Hara*, 167 Wn.2d at 99. This showing of actual prejudice makes the error "manifest," allowing appellate review. *State v. O'Hara*, 167 Wn.2d at 99. A third formulation asks whether this reviewing court may find the facts in the appellate record necessary to adjudicate the claimed error. *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995); *State v. Stoddard*, 192 Wn. App. 222, 228, 366 P.3d 474 (2016).

We agree with the State of Washington that Pedro Hilliard fails to demonstrate manifest constitutional error. Hilliard cites no case law that holds the use of the term "controlled buy" unacceptable, let alone violative of an accused's right to a fair trial.

Argument of Accountability

Pedro Hilliard next assigns error to the prosecution's request to the jury that it hold him "accountable" for his conduct. We disagree because Hilliard did not object to use of

the term during trial and Hilliard fails to show flagrant misconduct and enduring

prejudice.

We agree with Pedro Hilliard that, in the abstract, the State must not ask a jury to

hold the accused "accountable." The legal system tasks the jury with deciding whether

the State proved beyond a reasonable doubt that the accused committed the charged

crime or crimes, not to hold an accused accountable for misbehavior. Many individuals

need accountability for misbehavior, but do not deserve imprisonment or the shame of a

conviction because they committed no crime.

Because a prosecuting attorney represents the people and must act with

impartiality in the pursuit of justice, he must subdue courtroom zeal for the sake of

fairness to the defendant. *State v. Thorgerson*, 172 Wn.2d 438, 443, 258 P.3d 43 (2011).

The prosecutor must refrain from making "bald appeals to passion and prejudice." *State

v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009). The prosecution must not

mischaracterize the jury's role as something other than determining whether the State has

proved its case beyond a reasonable doubt. *State v. Emery*, 174 Wn.2d 741, 760, 278

P.3d 653 (2012).

We note additional principles. To prevail on a claim of prosecutorial misconduct,

a defendant must demonstrate that, in the context of the record and all of the

circumstances of the trial, the prosecutor's conduct was both improper and prejudicial.

*State v. Thorgerson*, 172 Wn.2d at 442. Misconduct prejudices an accused if there is a

substantial likelihood it affected the verdict. *State v. Emery*, 174 Wn.2d at 760-61 (2012). Absent a defense objection at trial, like this case, the accused waives the complaint unless the misconduct is so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury. *State v. Korum*, 157 Wn.2d 614, 650, 141 P.3d 13 (2006). The appellate court reviews a prosecutor's statements in context of the overall argument, the issues in the case, and the jury instructions. *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006).

In *State v. Emery*, 174 Wn.2d 741 (2012), the state high court held that the prosecution mistakenly argued that the jury's purpose was to speak the truth. Nevertheless, the Supreme Court refused to reverse convictions for kidnapping, robbery and rape. Trial defense counsel failed to object to the prosecution's argument, and the defendant did not establish flagrant and ill-intentioned misconduct.

In light of the entire trial testimony and defense counsel's argument during closing statement, we find no flagrant misconduct of the prosecution in Pedro Hilliard's trial. Hilliard's trial counsel forcefully and properly impugned the integrity of the confidential informant and petitioned the jury not to believe any of the informant's testimony. The prosecution uttered its comments in the context of informing the jury that the confidential informant was not on trial and the jury's role was not to hold the informant accountable for his many misdeeds.

10

Cumulative Error

Pedro Hilliard contends that an accumulation of errors resulted in an unfair trial. Even if one trial error does not require a reversal, an accumulation of errors may. *State v. Coe*, 101 Wn.2d 772, 789, 684 P.2d 668 (1984). Since we find no error, we need not address this argument.

Statement of Additional Grounds

In a statement of additional grounds, Pedro Hilliard assigns seven errors. Assignments one through four address the weight or credibility of evidence or refer to facts outside the record on review. Questions of credibility, persuasiveness, and conflicting testimony must be left to the jury. *In re Personal Restraint of Martinez*, 171 Wn.2d 354, 364, 256 P.3d 277 (2011). The weight accorded to evidence lies solely within the province of the jury. *State v. Rogers*, 44 Wn. App. 510, 517, 722 P.2d 1349 (1986). Only documents that are contained in the record should be referred to in a statement of additional grounds for review. RAP 10.10(c).

Pedro Hilliard assigns error to the use of the particular confidential informant in his investigation. Testimony at trial indicated that the Spokane Police Department does not employ an informant with criminal convictions for dishonest crimes unless approved by a special investigating unit. Hilliard observes that no special unit approved of his informant. Because of the lack of approval, Hilliard argues the trial court should have excluded all of the informant's testimony. He cites no legal authority for this argument.

11

The exclusionary rule only applies when there is an illegal search or seizure in violation of the constitution. *State v. Ladson*, 138 Wn.2d 343, 359, 979 P.2d 833 (1999). No law requires law enforcement to gain approval for use of a confidential informant. Hilliard's trial counsel effectively employed the informant's past when defending Hilliard.

Pedro Hilliard next complains that his trial counsel performed ineffectively when failing to move to dismiss charges at the end of the State's case. Hilliard contends the trial court should have dismissed the charges because no law enforcement officer observed the delivery of any drugs by Hilliard to the informant. We reject this argument because a conviction may stand on testimony of witnesses other than law enforcement officers. Other testimony amply supported the conviction.

Finally, Pedro Hilliard assigns error to the trial judge advising the State to ask a certain question and procure a specific answer from a witness to lay a foundation needed to admit an exhibit. Hilliard argues the trial court improperly acted as counsel by dispensing this advice and thereby breached his role to remain impartial. Pedro Hilliard cites no law to support his contention. Assuming he asserts the appearance of fairness doctrine, Hilliard's argument fails because the doctrine is not constitutional in nature and cannot be raised for the first time on appeal. RAP 2.5(a); *State v. Blizzard*, 195 Wn. App. 717, 725, 381 P.3d 1241 (2016), *review denied*, 187 Wn.2d 1012, 388 P.3d 485 (2017).

No. 35082-7-III
*State v. Hilliard*

CONCLUSION

We affirm the three convictions of Pedro Hilliard for delivery of a controlled

substance. We deny the State costs on appeal because of the continued indigency of

Hilliard.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Korsmo, J.

_____
Siddoway, J.

13