FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2019 JAN 14 AM 11: 24

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| THE STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>ALEXANDER A. SOLORAZANO, AKA ALEXANDER A. AOLORAZANO,<br><br>Appellant. | No. 77169-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: January 14, 2019 |

APPELWICK, C.J. — A jury found Solorazano guilty of second degree assault with a deadly weapon. Solorazano argues that the State failed to prove that the knife he had was a deadly weapon. And, he argues that the State failed to prove that he had the specific intent to assault Valdovinos. We affirm.

## FACTS

On October 27, 2016, police responded to a domestic dispute at a mobile home park in Kent, Washington. The dispute involved a male with a knife. At the scene, police identified Alexander Solorazano as the male and placed him in custody.

Police then entered the mobile home. Inside, they approached Blanca Valdovinos, Solorazano's girlfriend, and her daughter, M.V. Valdovinos appeared frantic and scared. Police collected what they believed to be the knife used in the altercation. An officer testified that he did not notice any injuries on Valdovinos, and that either Valdovinos or M.V. led him to the knife. The knife was 12 inches

long with a 7 inch blade. At trial, the knife was admitted into evidence without objection.

The State charged Solorazano with second degree assault domestic violence, pursuant to RCW 9A.36.021(1)(c). It alleged that Solorazano assaulted Valdovinos "with a deadly weapon, to-wit: a knife." At trial, the jury heard the 911 call from the night of the incident.[1] The dispatcher on the call first spoke to Valdovinos. At one point during the call, Valdovinos stated, "Alex! Alex! (indiscernible). No. He have [sic] knife. He have [sic] knife." And, when the dispatcher asked what was happening, M.V. responded, "I don't know. I just woke up, and next thing I know he was -- he had my mom in a headlock, and he had a knife. And now, I don't know what's happening."

M.V. then told the dispatcher that she did not see the knife, but her mom did. And, she told the dispatcher that she, her mom, and her youngest sibling were all locked in a room. Solorazano was not with them at that point, and M.V. did not know where he had gone. Neither M.V. nor Valdovinos testified at trial.

The jury found Solorazano guilty of second degree assault as charged.[2] Solorazano appeals.

---

[1] The trial court found the tape admissible under the present sense impression and excited utterance exceptions to the hearsay rule. The trial court ruled that the tape was not "testimonial." Solorazano does not challenge the tape's admission into evidence on appeal.

[2] The jury also found aggravating circumstances. But, the trial court granted Solorazano's postconviction motions to dismiss the domestic violence designation and child presence aggravator, based on insufficient evidence.

DISCUSSION

Solorazano argues that there was insufficient evidence, asserting that the State failed to prove (1) that the knife was a deadly weapon, and (2) that he had the specific intent to assault Valdovinos.

We review challenges to the sufficiency of the evidence de novo. State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). Evidence is sufficient to support a conviction where, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In re Pers. Restraint of Martinez, 171 Wn.2d 354, 364, 256 P.3d 277 (2011). When an appellant challenges the sufficiency of the evidence, he admits the truth of the State's evidence and all inferences that can reasonably be drawn therefrom. Id. Circumstantial and direct evidence are equally reliable. State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We leave questions of credibility, persuasiveness, and conflicting testimony to the jury. Id.

The State charged Solorazano with second degree assault under RCW 9A.36.021(1)(c). The jury instructions provided that "[a] person commits the crime of assault in the second degree when he or she assaults another with a deadly weapon."[3] The instructions defined "assault" as "an act, with unlawful force, done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury."

---

[3] Jury instructions not objected to become the law of the case. State v. Hickman, 135 Wn.2d 97, 102, 954 P.2d 900 (1998). Solorazano did not object to these instructions.

The jury instructions defined "[d]eadly weapon" as "any weapon, device, instrument, substance, or article, which under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm." The jury instructions defined "act[ing] with intent or intentionally" as "acting with the objective or purpose to accomplish a result that constitutes a crime."

Solorazano argues that the State failed to prove that the knife was a deadly weapon. Relying on Martinez, he argues that the State proved only that he possessed a knife, "which completely fails to provide any proof of the offense." Solorazano also argues that the State failed to prove that he had the specific intent to assault Valdovinos. He argues that an inference that he "specifically intended to cause apprehension" is "not reasonable" and "based solely on speculation."

In Martinez, police officers responded to a potential burglary at a farm shop. 171 Wn.2d at 357. One officer found Martinez there and began chasing him. Id. at 358. When the officer caught up to Martinez and placed him in handcuffs, he noticed an empty knife sheath on Martinez's belt. Id. at 358. Officers then located a knife about 15 feet from the farm shop, and Martinez identified the knife as his own. Id. A jury found Martinez guilty of first degree burglary, which required the State to prove that he was armed with a deadly weapon or assaulted another person. Id. at 359, 364.

The State Supreme Court held that RCW 9A.04.110(6), which defines "deadly weapon" for Washington's criminal code, requires more than mere possession where the weapon is not a firearm or explosive. Id. at 364, 366.

4

Instead, a weapon's "status rests on the manner in which it is used, attempted to be used, or threatened to be used." Id. at 366. The court found that the only evidence that Martinez attempted to use the knife was his unfastened sheath. Id. at 369. No one saw him with the knife, he manifested no intent to use it, and no one saw him reach for the knife after he was apprehended. Id. at 368. Accordingly, the court determined that the evidence was insufficient to lead a rational fact finder to find intent to use the weapon beyond a reasonable doubt. Id. at 369.

But, unlike Martinez, here there is evidence that Valdovinos saw Solorazano display the knife and that he had committed an assault when he placed her in a headlock. During the 911 call, Valdovinos stated, "Alex! Alex! (indiscernible). No. He have [sic] knife. He have [sic] knife." M.V. then told the dispatcher that Solorazano had her mom in a headlock. Valdovinos, M.V., and M.V.'s youngest sibling stayed locked in a room while M.V. spoke to the dispatcher. An officer testified that when they approached the mobile home, Valdovinos appeared to be frantic and scared. And, he testified that either Valdovinos or M.V. led him to the knife. The knife had a seven inch blade.

A rational trier of fact could infer from this evidence that Valdovinos was in fact placed in fear of bodily harm from the manner in which Solorazano used the knife. Solorazano does not argue that Valdovinos's fear was not reasonable. "Intent is rarely provable by direct evidence, but may be gathered, nevertheless, from all the circumstances surrounding the event." State v. Gallo, 20 Wn. App. 717, 729, 582 P.2d 558 (1978). Here, a rational trier of fact could infer from Valdovinos's reasonable fear that Solorazano displayed the knife in a manner

5

intended to create in Valdovinos an apprehension and a fear of substantial bodily injury. And, a rational trier of fact could infer that, under the circumstances in which Solorazano displayed the knife, it was capable of causing death or substantial bodily harm. Accordingly, the evidence was sufficient to prove that Solorazano used the knife as a deadly weapon, and that he specifically intended to assault Valdovinos.

We affirm.

_Appelwick, CJ_

WE CONCUR:

_Chun, J._          _Schindler, J._